**In re CITRONE DEVELOPMENT CORP., Debtor.**

**Bankruptcy No. 87 B 20490.**

United States Bankruptcy Court, S.D. New York.

Oct. 25, 1989.

Sidney R. Turner, White Plains, N.Y., for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Sidney Turner, attorney for the former Chapter 11 debtor, Citrone Development Corp., seeks final compensation for his ser-

vices which were performed before the debtor was converted for Chapter 7 liquidation, pursuant to a motion made by the United States trustee. The Chapter 7 trustee has not completely administered this case and there is no clear picture as to what assets, if any, are on hand for distribution.

Sidney Turner's application relates back to a time before the debtor filed its Chapter 11 petition and includes services performed in connection with a state court foreclosure action commenced by a mortgagee bank against the debtor. A judgment of foreclosure was obtained by the mortgagee in the sum of approximately $2,400,000.00. The only asset in this estate is a shopping center which is encumbered by mortgages which arose out of the financing and construction of the shopping center, totalling approximately $2,500,000.00.

On October 13, 1987, three creditors filed with this court an involuntary petition against the debtor under Chapter 7 of the Bankruptcy Code.

On February 1, 1988, Sidney Turner was authorized by order of this court to represent the debtor. Accordingly, any compensable legal services performed by Turner cannot include any activities before February 1, 1988, the date of his retention.

On February 3, 1988, the debtor filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtor first proposed to form a new corporation and sell its shopping center to the new corporation. The creditors, who were offered stock in the proposed corporation, successfully objected to the proposal. The debtor then proposed to assign its sole asset to an insider corporation controlled by the debtor's principal in exchange for which the insider corporation would assume the debtor's mortgage. Once again the creditors successfully objected to the debtor's motion to accomplish this proposal.

By motion dated December 21, 1988, the United States trustee moved to convert this case for liquidation under Chapter 7 of the Bankruptcy Code because the debtor failed to file monthly operating statements and failed to comply with the United States trustee's operating guidelines. Additionally, the debtor did not file a plan of reorganization or a disclosure statement. In the absence of any progress in this case and the fact that the debtor had not taken any action to benefit its creditors in their voluntary Chapter 11 petition, this court granted the United States trustee's petition for conversion on January 20, 1989.

By motion dated January 30, 1989, Sidney Turner moved to be relieved as attorney for the debtor, which motion was granted by order of this court dated February 12, 1989.

For the period between February 1, 1987, when Sidney Turner was retained as attorney for the debtor, and February 12, 1989, when he was relieved at his own request, he appeared at several creditor's meetings and in this court in connection with the proposals to sell and assign the debtor's sole asset in the face of the mortgage foreclosure judgment. Had an order for relief been entered in connection with the original involuntary petition on October 23, 1987, the creditors would have been spared two years of delay in the enforcement of their rights. During the Chapter 11 period, the debtor did nothing tangible to benefit any of its creditors. The proposed sale of the debtor's corporation to a corporation controlled by its principal would not have advanced the interests of the creditors because they would simply have to chase another corporation for the debts owed by this debtor.

Neither the debtor nor its attorney performed the duties imposed under Chapter 11 or under the United State's trustee's operating guidelines in that no plan of reorganization was filed nor were monthly operating statements submitted. Hence, there was no forward movement towards any reorganization contemplated under Chapter 11 which might have a reasonable prospect of success.

In reviewing the posture of this case it is also clear that after payment of the so-called "burial expenses" imposed under 11 U.S.C. § 726(b), which have priority in a superseding Chapter 7 case over the subor-

dinated administrative expenses in the aborted Chapter 11 case, there will be relatively few remaining funds, if any, to satisfy the attorney fees with respect to the Chapter 11 case.

The trustee in bankruptcy objected to Sidney Turner's application on the ground that he failed to describe how his services benefitted the estate. The United States trustee did not appear because Sidney Turner failed to submit a copy of his application to the United States trustee before the hearing. No other parties in interest were given notice of the hearing, despite the requirement in 11 U.S.C. § 330(a) which requires notice "to any parties in interest and to the United States trustee."

The application in support of the $55,-000.00 fee sought by Sidney Turner consists mainly of 19 pages containing a list of every telephone call he made or received in connection with this case. There is no description as to what subjects or issues were discussed or how these telephone calls had any significance in this case. Indeed, names are listed without any indication as to who these people are or what connection, if any, they had to this case. There is no listing of any litigation or adversary actions commenced, probably because there were none. There is no reference to any preferences recovered, fraudulent conveyances set aside, turnover proceedings commenced, claims objected to or assets recovered for this estate, probably because the answer would also be none. There were two motions involving the proposed sale and assignment of the debtor's sole asset, both of which were denied by the court following opposition by the creditors. The applicant also opposed a creditor's motion for relief from the automatic stay and a motion made by the United States trustee for conversion of the case. Some time was spent preparing the Chapter 11 petition and drafting a plan which was never filed. Some time was spent attending creditor's meetings. The bulk of the time for which compensation is sought related to the undetailed list of telephone calls.

## DISCUSSION

It was not until 1973 that an attorney for a debtor in an aborted arrangement case under Chapter XI of the former Bankruptcy Act could receive compensation in the Second Circuit for service rendered to the debtor, notwithstanding the conversion of the case for liquidation. *In re Casco Fashions,* 490 F.2d 1197 (2d Cir.1973). The Court of Appeals ruled that the debtor's attorney could be awarded compensation out of the estate over the objection of the trustee in bankruptcy because:

> what the attorneys for the debtor have accomplished along the lines indicated will diminish *pro tanto* the work that must be performed by the attorneys for the trustee, and failure to compensate them would constitute unjust enrichment of the creditors at the expense of attorneys working in good faith with the approval and at the direction of the bankruptcy court.

*Id.* at 1201–2. The court went on to state that attorneys for debtors whose arrangements were not accepted should be compensated at subnormal rates explaining that "certainly this should be true if the proposed arrangement was so unfair that creditors could not be expected to accept." *Id.* at 1204.

In order to be compensated for attorney's fees under the Bankruptcy Code, a debtor's attorney need not have achieved a confirmed plan of reorganization. Pursuant to 11 U.S.C. § 330(a), an attorney retained by a debtor whose retention was approved by the court may recover reasonable compensation for the actual, necessary services rendered, and by the value and time spent in performing the services in accordance with the cost of comparable nonbankruptcy legal services. In order to obtain compensation, the attorney must comply with Bankruptcy Rule 2016 and file with the court an application setting forth a detailed statement of the service rendered and the time expended. Unless the order of retention allows for compensation *nunc pro tunc,* the attorney may not recover for any services performed before the retention order was signed. *In re Hen-*

*ry F. Raab, Inc.*, 85 B.R. 293, 297 (Bankr.S. D.N.Y.1988).

The major portion of the Chapter 11 time spent by the attorney for the debtor in this case, before conversion to Chapter 7, is listed as telephone conversations with named individuals whose connection with this case is not specified. The substance of the conversations is also not specified nor is there any explanation as to how any telephone call advanced the debtor's interests in the case or contributed to the administration of the Chapter 11 issues. The failure to provide sufficient details to allow the court to perform its task of determining the nature and value of the time spent by the attorney for the debtor while engaged in those telephone conversations compels a conclusion that they are not compensable. *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 739 (Bankr.N. D.Ill.1988); *In re Crawford Hardware, Inc.*, 82 B.R. 885, 888 (Bankr.S.D.Ohio 1987); *In re C. & J. Oil Co., Inc.*, 81 B.R. 398, 403 (Bankr.W.D.Va.1987). An applicant for attorney's fees has the burden of presenting a carefully detailed application and supporting documentation. *In re Meade Land & Development Co., Inc.*, 577 F.2d 858, 860 (3rd Cir.1978); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 832 (Bankr. D.Vt.1987). Items such as meetings, conferences, correspondence, and telephone calls should identify the participants, describe the substance of the communication, explain its outcome, and justify its necessity. *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 833.

Apart from the listing of telephone conversations, the debtor's attorney attended approximately eight creditor's meetings pursuant to 11 U.S.C. § 341, attended hearings involving his two unsuccessful motions to sell or assign the debtor's sole asset, attended a creditor's motion for relief from the automatic stay, attended the United States trustee's motion to convert the Chapter 11 case, prepared a fee application and a motion to be relieved as counsel for the debtor. In addition to preparing the Chapter 11 petition, he spent time preparing and amending a plan of reorganization which was never filed. In reviewing these activities in light of the twelve so-called Johnson factors delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), it cannot be determined to what extent the debtor's former counsel performed legal services which benefitted the estate. Accordingly, the application must be denied, without prejudice to the submission of a detailed fee application which complies with 11 U.S.C. § 330 and Bankruptcy Rule 2016. Should the applicant submit another fee application in this case he must also comply with the requirement expressed in 11 U.S.C. § 330 and submit a copy of the application with proper notice in advance of any scheduled hearing to all interested parties, including the United States trustee, the debtor and those unsecured creditors who have appeared in this case, such as the three petitioning creditors who filed the involuntary Chapter 7 petition.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The fee application filed by the former attorney for the debtor is denied because it does not comply with the requirements of 11 U.S.C. § 330(a) and Bankruptcy Rule 2016. Such denial is without prejudice to a resubmission in compliance with the foregoing mandates.

It is so ordered.